## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-80237-CIV-MIDDLEBROOKS

STEVEN WELP, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

CIGNA HEALTH AND LIFE
INSURANCE COMPANY, NEXTERA
ENERGY, INC., NEXTERA ENERGY,
INC. EMPLOYEE HEALTH AND
WELFARE PLAN, and THE
EMPLOYEE BENEFIT PLANS
ADMINISTRATIVE COMMITTEE,

      Defendants.

_____/

### <u>ORDER AND OPINION GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>

      THIS CAUSE comes before the Court upon two separately filed Motions to Dismiss: the first by Defendants NextEra Energy, Inc. ("NextEra"), the NextEra Energy, Inc. Employee Health and Welfare Plan ("the Plan"), and Employee Benefit Plans Administrative Committee ("the Committee") (collectively, "the NextEra Defendants"), filed on April 11, 2017 ("NextEra Motion") (DE 35); the second by Defendant Cigna Health and Life Insurance Company ("Cigna") (together with the NextEra Defendants, "Defendants"), filed on April 19, 2017 (DE 50) ("Cigna Motion") (together with the NextEra Motion, "Motions"). Plaintiff Steven Welp ("Plaintiff") filed an Omnibus Response in opposition to the Motions on May 12, 2017 (DE 65), to which Defendants separately replied (DE 69 & 70). The Court consolidates the arguments set forth in the two Motions (and the responsive briefs) for review purposes. For the reasons stated below, the Motions are granted.

## BACKGROUND

This action is based on the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, Pub. L. 110-343, 122 Stat. 3765 (the "Parity Act" or "the Act"), incorporated into the federal code at 29 U.S.C. § 1185a. Plaintiff is a full-time employee of NextEra. (DE 21, Amended Complaint, hereinafter "Compl.," at ¶¶ 2, 7). NextEra sponsors an employee health plan – the Plan. (*Id.* at ¶¶ 8-9). It allegedly has discretionary authority to administer the Plan and allegedly owes a fiduciary duty to the participants and beneficiaries thereof. (*Id.*). Plaintiff is one such participant. (*Id.* at ¶ 7). In addition, NextEra created the Committee to administer and interpret the Plan's provisions. (*Id.* at ¶ 10). Cigna is an insurance provider that serves as a "claims administrator/third party administrator" for the Plan, with alleged "discretionary authority over the delivery of [the Plan's] insurance benefits" and consequent fiduciary obligations to participants and beneficiaries. (*Id.* at ¶ 11).

Plaintiff alleges, and a copy of the Summary Plan Description ("SPD") confirms, that the Plan pays – in whole or part – for participants' "medical services and supplies" that are "specifically covered." (Compl. at ¶ 12; Ex. A at 36 (DE 21-1 at 41)). Coverage extends to services and supplies that are "medically necessary." (*Id.*). To qualify as "medically necessary," a specific service or supply must be:

> of demonstrated value for treatment of the medical condition, consistent with the diagnosis and no more than required to meet the basic health needs of the patient. For example, it must be required for purposes other than comfort or convenience and must be provided in the least intensive setting that is appropriate.

(*Id.*). The same provision also provides that "[a]ll determinations of medical necessity are made by Cigna based upon Cigna's written medical necessity policies, which are a part of the [P]lan's terms and conditions." (*Id.*). Plaintiff acknowledges that "[m]ental [h]ealth and substance abuse treatment is a covered service." (Compl. at ¶ 12).

Plaintiff's son is covered by the Plan as a beneficiary. (*Id.* at ¶ 13). For years, Plaintiff's son has suffered from "mental health issues," including "depression, low self-esteem, suicidal ideation, and drug use." (*Id.*). In February 2015, his therapist recommended he be treated in an intensive, in-patient setting. (*Id.*). Plaintiff and his spouse chose to send their son to Second Nature Therapeutic Wilderness Program ("Second Nature") in Utah, which Plaintiff characterizes as a "metal health service provider." (*Id.*). The son began treatment on February 27, 2015 (*id.*), and, Plaintiff implies, completed the program at some undisclosed point.

Plaintiff applied for the Second Nature program to be covered under the Plan, which was denied. (*Id.* a ¶ 14). The Committee upheld the denial following Plaintiff's internal appeal. (*Id.* at ¶ 15). According to Plaintiff, the denial was "based exclusively on the [P]lan's exclusion for all wilderness-related treatment without regard to the services' medical necessity." (*Id.*). Plaintiff quotes at length from the appeal denial letter, which refers both to the SPD definition of medical necessity and to Cigna's standards and criteria ("Cigna Standards") for determining whether a given treatment is necessary. (*Id*; Ex. B at 1-2 (DE 21-2 at 2-3)). The denial letter includes a purported excerpt from the latter concerning wilderness programs:

> . . . under the section title, Residential Mental Health Treatment for Children and Adolescents – Exclusions, page 27 states "**Wilderness Programs, Boot Camps, and/or Outward Bound Programs**: These programs may provide therapeutic alternatives for troubles [sic] and struggling youth, teens and adults, offering experiential learning and personal growth through outdoor and adventure-based programming. However, they do not utilize a multidisciplinary team that includes psychologists, psychiatrists, pediatricians, and licensed therapists who are consistently involved in the care of the child or adolescent. These programs nearly universally do not meet standards for certification as psychiatric residential treatment programs or the quality of care standards for medically supervised care provided by licensed mental health professionals.["]

(*Id.*).

Plaintiff does not attach the Cigna Standards themselves to the Complaint. But Cigna attaches a relevant section of it to an affidavit submitted in support of its Motion. (DE 51-4).[1] That section, entitled "Residential Mental Health Treatment for Children and Adolescents," distinguishes between qualifying and non-qualifying residential programs. The site of a qualifying program is a "Psychiatric Residential Treatment Facility" (PRTF). The Cigna Standards set forth necessary components of PRTFs, including (a) unlocked sleeping areas; (b) a staff of a "multidisciplinary treatment team under the leadership of a Board Certified/Board Eligible Psychiatrist" who conduct "face-to-face interview[s]" with residents at designated times; (c) the provision of "intensive mental health care, physical heath care, and access to ongoing education"; (d) and the continuous presence of an on site nurse and psychiatrist. (*Id*. at 4). Further, PRTFs must be oriented towards the residents' "stabilization and improvement of functioning and reintegration with parents/relatives or guardians." (*Id*. at 5). That means qualifying programs provide "transitional" treatment and do not institute specific time lengths, among other requirements. (*Id*.). To illustrate the selectivity of the PRTF class, the Cigna Standards list examples of "residential services . . . that do not meet all of the [] criteria." (*Id*.). Among the non-qualifying programs enumerated are "Wilderness Programs," the title of which is followed by the very description quoted in the denial letter. (*Id*.).

After the Committee affirmed the denial of coverage, Plaintiff paid for the Second Nature program out of pocket. (Compl. at ¶ 15). He filed a complaint in the instant action on February 24, 2017 (DE 1), which was amended once, on March 24, 2017. (DE 21). The Amended Complaint contains two counts, both under the Employee Retirement Income Security Act of 1974 ("ERISA"), into which the Parity Act is incorporated. Count One seeks to recover benefits

---

[1] For reasons discussed in note 5, *infra*, I consider this document at the motion to dismiss stage.

under the Plan, 29 U.S.C. § 1132(a)(1)(B).  (Compl. at ¶¶ 30-35).  Count Two alleges that Defendants breached their fiduciary duties to the Plan participants and beneficiaries and seeks unspecified equitable relief.  (*Id.* at ¶¶ 36-41).[2]  Plaintiff also seeks class certification.  (*Id.* at ¶ 29).  He asserts that he is representative of two classes of potential plaintiffs whose claims for coverage of wilderness programs were unlawfully denied.  (*Id.* at ¶¶ 19-29).  One is for individuals covered by plans underwritten by Cigna generally (*id.* at ¶ 19) and one is for participants of the Plan specifically (*id.* at ¶ 20).  The instant Motions, which, among other reasons, sought to dismiss the Amended Complaint on the basis of Fed. R. Civ. P. 12(b)(6), then followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6).  In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

---

[2] The Parties debate in the briefing whether any equitable relief separate from a recovery of benefits would be available in this case.  Regardless of the potential relief, liability under Count Two certainly depends on the same Parity Act theory advanced in Count One.  Thus, it is unclear why Plaintiff felt compelled to plead a separate cause of action rooted in the concept of fiduciary duty.  In any event, because Plaintiff's Party Act theory is untenable as currently pled, both counts fail to state a claim for relief.

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2).   Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56.   However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3.   Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).   "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## DISCUSSION

The Parties debate several threshold issues that I do not consider in this order.   Therefore, I assume *arguendo* that NextEra and Cigna are proper defendants; that Plaintiff exhausted the administrative appeals process; that his son is not a necessary and indispensible party who must

be joined; and that the Committee's denial of benefits is subject to *de novo* review. Even under this scenario, Plaintiff's Parity Act claim is fundamentally defective.

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016). The Act imposes liability on group insurance plans that institute treatment limitations which are "more restrictive" on "mental health or substance use disorder benefits" "than the predominant treatment limitations applied to substantially all [covered] medical and surgical benefits" or which are separately "applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii); *Am. Psychiatric Ass'n*, 821 F.3d at 356.[3] Treatment limitations may be of either a quantitative or non-quantitative variety. 29 C.F.R. § 2590.712(a). There is no comprehensive definition of non-quantitative limitations, but the Department of Health and Human Service's ("HHS") regulations provides an "[i]llustrative list" of examples, which includes – as relevant here – "(A) [m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative" and "(H) [r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for [covered] services." 29 C.F.R. § 2590.712(c)(4)(ii).

Plaintiff maintains that the Plan's terms impermissibly create a separate and non-quantitative limitation on specific mental health benefits. (Compl. at ¶ 18). The Amended

---

[3] The statute also prohibits more burdensome "financial requirements" on mental health and substance abuse treatment benefits. 29 U.S.C. § 1185a(a)(3)(A)(i). However, this kind of discrimination is not at issue.

Complaint cites the Plan's language regarding the "medical necessity" standard and concedes that the Plan covers mental health and substance abuse treatments. (*Id.* at ¶ 12). Working around this concession, Plaintiff alleges that the Committee denied coverage for Second Nature's services "based exclusively on the [P]lan's exclusion for all wilderness-related treatment without regard to the services' medical necessity." (*Id.* at ¶ 15).[4] There is also some suggestion that the exclusion was motivated by an animus towards the "location" in which Second Nature's services were "rendered." (*Id.* at ¶¶ 17-18). Plaintiff explains this claim further in his brief. He notes that the denial letter stated that "Therapeutic Wilderness Programs are not covered under NextEra's plan, are not recognized by Cigna, and are specifically listed on Cigna's exclusion list." (DE 65 at 18 (citing DE 21, Ex. B at 1)). By categorically refusing to cover these programs, the argument goes, Defendants dismiss out of hand their "individual *bona fides*" or the "individual medical needs of [] particular insured[s]." (*Id.* at 18-19). It is implied that a plan compliant with the Parity Act would evaluate these factors case-by-case. Hence Plaintiff's use of the "blanket exclusion" label in describing the Plan's alleged limitation.

Plaintiff's argument is not persuasive. As an initial matter, he mischaracterizes what undisputed documents show to be a mere application of generalized criteria as instead a "blanket exclusion for services at wilderness treatment centers." (Compl. at ¶ 18). The notion of a "blanket exclusion" has the ring of a "limitation" within the meaning of the Act. But closer inspection shows this to be illusory.

---

[4] It would therefore appear that rather than alleging that Defendants implemented some distinct and alternative limitation for mental health services, Plaintiff actually contends that Defendants simply ignored the otherwise applicable "medical necessity" standard.

Neither the SPD nor the Cigna Standards contain any terms that limit coverage of a residential program *because* it is conducted in the wilderness.[5]  The SPD sets forth the basic "medical necessity" definition and defers to Cigna to make specific determinations of coverage under this rubric.  (DE 21-1 at 41).  Additionally, the paragraph in the SPD under the heading "Mental Health and Substance Abuse" states, in part, that "[c]overage under the Plan for treatment of mental health and substance abuse is essentially the same as coverage for physical illnesses and injuries under the medical plan."  (*Id*. at 59).  That principle is entirely consistent with the Parity Act.  The Cigna Standards do not assist Plaintiff either.  Besides recapitulating the elements of medical necessity, they do two things that are relevant here.  First, they establish a classification of qualifying residential programs – PRTFs – and articulate the relevant criteria for a program to be considered a PRTF.  (DE 51-4 at 4-5).  Thus, this case is distinguishable from the district court opinions cited by Plaintiff, which categorically exclude mental health

---

[5] Plaintiff attaches a copy of the Summary Plan Description ("SPD") as Exhibit A to the Amended Complaint. (DE 21-1).  A district court can generally consider documents "attached to a complaint or incorporated in the complaint by reference . . . on a motion to dismiss under Rule 12(b)(6)."  *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Further, Rule 10(c) states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *see also Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (holding that Rule 10(c) assures court's consideration of document attached to complaint does not convert motion to dismiss into motion for summary judgment).  Therefore, I consider the SPD.  The Cigna Standards can also be evaluated, although Plaintiff did not attach them and, indeed, protests that they were not produced at the time the instant Motions were filed.  Nonetheless, a court can, under certain conditions, consider the contents of documents that have been introduced for the first time in a motion to dismiss.  That is the case when the documents are "(1) central to the plaintiff's claim; and (2) undisputed."  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same).  This is known as the "incorporation by reference" doctrine.  *Horsley*, 304 F.3d at 1134.  The Cigna Standards are central to Plaintiff's claims because the SPD empowers Cigna to make determinations of medical necessity and this document explains why wilderness programs are not medically necessary.  Plaintiff also does not dispute the Cigna Standards' authenticity and in fact relies on de-contextualized language excerpted therefrom in the denial letter.

residential programs from coverage. *See, e.g., Joseph F. Sinclair Serv., Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016) (original plan covered residential treatment benefits solely for mental health conditions, while subsequent plan retracted those benefits so that no residential treatment benefits were covered); *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015) (plan denied coverage for all residential treatment programs relating to mental health, except substance abuse, but contained no analogous denials for medical/surgical treatments in skilled nursing facilities). Further, none of the PRTF criteria create exclusions for treatments of particular mental conditions. *Compare with A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Or. 2014) (plan instituted Developmental Disability Exclusion, which denied coverage for autism treatment). Second, in the "Exclusions" subsection, the Cigna Standards enumerate a non-exhaustive list of program types that "do not meet all of the above criteria." (*Id.*). That section indeed excludes wilderness programs – but not because of their location. Read in context with the section outlining the aforementioned criteria, it is clear that the reasons offered – lack of a multidisciplinary team and consistent supervision by licensed professionals – correspond to the PRTF requirements.[6] *Those* requirements no doubt constitute non-quantitative treatment limitations under the Act. They discriminate between programs based on "facility type" and "medical management standards" (including, arguably, a classification-specific elaboration on "medical necessity"). But as Cigna notes in a footnote of its Motion, the citation to wilderness programs here serve as a mere illustration of a treatment that does not meet these limitations. In other words, the Cigna Standards *apply* certain, broader limitations – themselves uncontested by Plaintiff – to deny coverage for wilderness programs. The denial of

---

[6] The end of the paragraph nearly says as much. It states that wilderness programs "nearly universally do not meet standards for certification as psychiatric residential programs [i.e., "PRTFs"] or the quality of care standards for medically supervised care provided by licensed mental health professionals." (DE 51-4 at 5).

coverage for a requested benefit pursuant to a limitation is not the same thing as an *ex ante* limitation prohibiting coverage for that benefit.[7]   To properly plead a Parity Act violation resulting from the denial of the wilderness program's coverage, the first thing Plaintiff must do is correctly identify the relevant limitation – here, the distinction between qualifying and non-qualifying PRTFs.[8]   That is not the end of the inquiry, however, because as discussed below, Plaintiff must then allege a flaw in this limitation based on a comparison to a relevant analogue.

The Parity Act targets limitations that discriminate against mental health and substance abuse treatments *in comparison* to medical or surgical treatments.   Plaintiff's novel theory of liability, which identifies a more restrictive or separate limitation based on the standalone denial of coverage for Second Nature, finds no support in either the statute's text or its implementing regulations.   Recall that the statute requires any limitations on "mental health or substance use disorder benefits" to be "*no more restrictive than* the predominant treatment limitations applied

---

[7] By way of analogy, imagine that a city enacted an ordinance permitting the sale of "all-natural" beverages while banning the sale of "sodas."   Suppose further that the ordinance defined a "soda" as a carbonated beverage containing artificial sweeteners or high fructose corn syrup and listed Coca Cola, Pepsi, and Sprite as examples.   To claim that there is a specific, "blanket exclusion" on the sale of Coca Cola would be misleading.   The exclusion results from the application of a rule at a higher level of abstraction, not a specific animus towards Coke.   That does not mean that the soda ban is inherently fair.   But the problem would be with the overall criteria for beverage sales, not a particular instantiation thereof.   The same is true here.

[8] Alternatively, Plaintiff might simply allege that Second Nature did meet the PRTF criteria. Plaintiff appears to raise an argument of this sort in his Response, contending that Second Nature is a "fully licensed and accredited program providing psychiatrist and mental health services." (DE 65 at 14).   However, it appears from public records submitted by Cigna that Second Nature is not licensed by Utah as a "Residential Treatment Program."   (DE 70 at 13, n.5; DE 51-1 & 51-2).   Utah's administrative prerequisites for qualifying as such closely mirror Cigna's own standards for attaining PRTF status.   *See* Utah Admin. Code § R501-19.   Instead, Second Nature seems to qualify at most for Outdoor Youth Program status, which has less rigorous supervision requirements.   *See id.* at § R501-8.   Therefore, this is not – nor does the Amended Complaint allege this to be – a case where the individual program in question confounds the categorical distinctions.   Only in response to the Motions does Plaintiff raise for the first time the "individual *bona fides*" of the program.   (DE 65 at 18).   In any event, though such a claim might be cognizable under ERISA, it would not necessarily make out a Parity Act claim.

to substantially all [covered] medical and surgical benefits." 29 U.S.C. § 1185(a)(3)(A)(ii). Further, there must be "no *separate* treatment limitations that are applicable *only* with respect to mental health or substance use disorder benefits." *Id.* (emphasis added). Accordingly, these constraints deal with any limitations' *relative* restrictiveness and separateness.

Yet Plaintiff's claim considers wilderness programs in isolation. The Amended Complaint is virtually devoid of any comparisons between the limitations imposed on mental health/substance treatments and those on medical/surgical analogues.[9] Instead, it rests on the fact that coverage for a mental health treatment was sought and denied. But if Plaintiff's allegations could adequately state a claim under the Parity Act, then a violation of the Act would occur whenever a plan denied coverage for *any* mental health or substance abuse treatment, regardless of the plan's terms. That cannot be. The HHS regulations certainly do not contemplate unlimited mental health benefits. *See* Preamble, Final Rules 78 Fed. Reg. at 68246 (explaining that although the final regulations did not explicitly clarify the scope of services issue, "the Departments did not intend to impose a benefit mandate through the parity requirement that could require greater benefits for mental health conditions and substance use disorders than for medical/surgical conditions."). Further, such a construction contorts the very language of the statute's treatment limitation subsection. It removes the first clause entirely, as well as the words "separate" and "only" in the last, so that it would require plans to ensure that "no treatment limitations are applicable with respect to mental health or substance use disorder benefits." But courts "must construe [a] statute to give effect, if possible, to every word and

---

[9] In posing what he considers to be the legal issue in this case, Plaintiff asks abstractly whether "a health insurer [may] deny coverage for mental health treatment in circumstances where there is no corresponding limitation for treatment for physical injury . . .?" (Compl. at ¶ 1). But this is no more than a rhetorical or hypothetical device.

clause." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1204 (11th Cir. 2007). They should also avoid absurd results. *United States v. Maestrelli*, 156 F. App'x 144, 145 (11th Cir. 2005).

It is true that plaintiffs asserting Parity Act claims need not "plead specific details with respect to the appropriate standards of care." *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL 1270433, at *11 (N.D. Ill. Mar. 31, 2016). Thus, at least two courts have rejected the suggestion that a complaint must spell out the particular medical/surgical criteria which "demonstrate disparity." *See id*; *V. v. Health Care Serv. Corp.*, No. 15 C 09174, 2016 WL 4765709, at *8 (N.D. Ill. Sept. 13, 2016). But at the very least, a plaintiff must identify the treatments in the medical/surgical arena that are analogous to the sought-after mental health/substance abuse benefit and allege that there is *a* disparity in their limitation criteria. *Cf. id.* (court excerpts section of complaint explaining that plan's guidelines for limiting coverage of mental illness diverge from "generally accepted standards of care" used for determinations of coverable "medical/surgical conditions").[10] While these factual allegations are necessary, I decline to decide whether they are sufficient.[11] It is enough to observe that Plaintiff has not

---

[10] It is not difficult for Plaintiff to ascertain and plead the medical treatments analogous to inpatient residential care for mental health conditions. The preamble to the final HHS regulations identifies them. *See* Preamble, Final Rules 78 Fed. Reg. at 68247 ("Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications. For example, if a plan or issuer classifies care in *skilled nursing facilities or rehabilitation hospitals* as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.") (emphasis added). Plaintiff is certainly aware of these regulations, as he quotes this very language in his response to the Motions. (DE 65 at 9).

[11] There is some reason to believe that a complaint must do more. The final regulations state that the validity of a "non[-]quantitative treatment limitation" on mental health or substance use treatments in a given benefit classification turns on how comparable that limitation's "processes, strategies, evidentiary standards, or other factors" – i.e., its criteria – are to the criteria used for medical/surgical benefits in the same classification. 29 C.F.R. § 2590.712(c)(4). That suggests that plaintiffs must plead the difference between those criteria. One district court in Illinois has,

accomplished this much.  As discussed above, the Amended Complaint is silent on the criteria used to distinguish PRTF facilities from non-PRTF facilities.  But in addition, it ignores comparable medical/surgical treatments and whether the criteria used to differentiate qualifying from non-qualifying forms of those treatments are in anyway "more restrictive" than or "separate" from the PRFT criteria.

In sum, Plaintiff does not state a claim for relief under the Parity Act because he misidentifies the relevant "limitations" at issue and does not compare those limitations to medical/surgical analogues.  For these reasons, the Amended Complaint must be dismissed. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the Motion to Dismiss filed by Defendants NextaEra Energy, Inc., the NextEra Energy, Inc. Employee Health and Welfare Plan, and Employee Benefit Plans Administrative Committee (DE 35) is **GRANTED** and that the Motion to Dismiss filed by Defendant Cigna Health and Life Insurance Company (DE 50) is also **GRANTED**.  The Amended Complaint (DE 21) is **DISMISSED WITHOUT PREJUDICE**. Although amendment may be futile, Plaintiff shall file any Second Amended Complaint by **July 31, 2017**.  The Clerk of Court shall **DENY** all other pending motions (DE 37, 44, 77, 78, & 79) **AS MOOT**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this $20$ day of July, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

however, held that these specific differences are matters for discovery.  *See V.*, 2016 WL 4765709, at *8.

14