UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80237-CIV-MIDDLEBROOKS

STEVEN WELP, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

CIGNA HEALTH AND LIFE
INSURANCE COMPANY, NEXTERA
ENERGY, INC., NEXTERA ENERGY,
INC. EMPLOYEE HEALTH AND
WELFARE PLAN, and THE
EMPLOYEE BENEFIT PLANS
ADMINISTRATIVE COMMITTEE,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant Cigna Health and Life Insurance Company's ("Cigna") Motion to Dismiss Plaintiff Steven Welp's ("Plaintiff") Second Amended Complaint ("Motion"), filed on August 28, 2017. (DE 85). After I stayed this case pending a ruling on the Motion (DE 91), and after granting Plaintiff numerous extensions of time to respond to the Motion, Plaintiff responded on October 9, 2017 (DE 95). After another extension of time, Cigna replied on October 27, 2017. (DE 98). For reasons stated below, Cigna's Motion is granted, and Plaintiff's case is dismissed.

### I. BACKGROUND

On July 20, 2017, I dismissed Plaintiff's Amended Complaint (DE 21) for failing to state a claim under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, Pub. L. 110-343, 122 Stat. 3765 (the "Parity Act"), incorporated into the federal code at 29 U.S.C. § 1185a. (DE 80 (hereinafter, "Dismissal Order")). Although I noted that

"amendment may be futile," I granted Plaintiff leave to amend its complaint by July 31, 2017. (DE 80 at 14).

The underlying factual allegations in the timely filed Second Amended Complaint ("SAC") that serve as the basis for this suit are substantially similar to those in the Amended Complaint. Plaintiff again alleges that he received his health insurance through his employer, non-party NextEra Energy, Inc. ("NextEra"), through a self-insured plan called the NextEra Energy, Inc. Employee Health and Welfare Plan (the "Plan"). (DE 81 (hereinafter, "SAC") at ¶¶ 5, 14). The Plan was administered by Cigna, which "is a claims administrator/third party administrator" and allegedly had "full discretionary authority to administer the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries." (*Id.* at ¶ 16).

Plaintiff attached a copy of the Summary Plan Description ("SPD") to the SAC. (SAC, Ex. A).[1] The Plan covers services and supplies that are "medically necessary." (*Id.* at 41). The same provision also provides that "[a]ll determinations of medical necessity are made by Cigna based upon Cigna's written medical necessity policies, which are a part of the [P]lan's terms and conditions." (*Id.*). Plaintiff acknowledges that the Plan "provides coverage for inpatient and outpatient mental health and substance abuse treatment" along with "medical/surgical coverage for care at skilled nursing facilities and rehabilitation hospitals." (SAC at ¶ 35). Plaintiff also alleges that the aforementioned treatments are analogous for purposes of Parity Act coverage requirements. (*Id.* at ¶¶ 41-42).

---

[1] A district court can generally consider documents "attached to a complaint or incorporated in the complaint by reference . . . on a motion to dismiss under Rule 12(b)(6)." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Further, Rule 10(c) states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (holding that Rule 10(c) assures court's consideration of document attached to complaint does not convert motion to dismiss into motion for summary judgment). Accordingly, I consider the documents attached to the SAC, the SPD (SAC, Ex. A), the Denial Letter (SAC, Ex. B), and the Cigna Standards (SAC, Ex. C) in evaluating the Motion to Dismiss.

Plaintiff's son is covered by the Plan as a beneficiary. (*Id.* at ¶ 15). Plaintiff alleges that after years of suffering from "mental health and substance abuse issues," including "depression, low self-esteem, suicidal ideation, and drug use," in February 2015, his son's psychiatrist and therapist recommended Plaintiff's son be treated in an intensive, residential program. (*Id.* at ¶¶ 17-18). Plaintiff and his spouse chose to send their son to Evoke at Entrada[2] ("Evoke") in Utah, which Plaintiff characterizes as a "mental health and substance abuse service provider." (*Id.* at ¶ 18). Plaintiff alleges that Evoke is "a licensed Outdoor Youth [Program]" in Utah, and discusses at length the requirements to be licensed as such. (*Id.* at ¶¶ 27-32 (citing Utah Admin. Code r. 501-8 (2017))). The son began treatment on February 27, 2015 (*id.* at ¶ 19), and, Plaintiff implies, completed the program at some undisclosed point.

Plaintiff applied for his son's treatment at Evoke to be covered under the Plan, which was denied. (*Id.* at ¶ 21, Ex. B). Plaintiff appealed the initial decision to deny coverage under the Plan to the Employee Benefit Plans Administrative Committee (the "Committee"), which upheld the denial of coverage. (*Id.*). The Denial Letter, dated June 23, 2015 and attached to the SAC as Exhibit B, details the basis for denying Plaintiff's appeal and outlines the administrative process for Plaintiff to challenge the determination. (*Id.*, Ex. B). The Denial Letter states:

> This is a final determination. Under the Plan's administrative guidelines the plan participant is entitled to request a review by an external independent review organization. An independent review is conducted by a provider with experience in the applicable specialty and performed as a complete review of all relevant provided medical information. There is no cost to the participant for the independent review and the plan would be bound by any decision made by the external reviewer. The participant has 180 days from the date of receipt of this adverse benefit determination to request an external review and only the plan participant may request the review. . . . If the request for an external independent review is accepted, we will provide written confirmation and further information on the process.

---

[2] Plaintiff now refers to the outdoor/wilderness behavior healthcare program that his son attended as "Evoke at Entrada," not "Second Nature Therapeutic Wilderness Program," because Plaintiff represents that the program has changed its name. (SAC at ¶ 6).

3

(*Id.* at ¶ 22, Ex. B at 2). Plaintiff alleges that he completed the "Plan's internal appeal process," but does not allege that he completed the external review procedure provided for by the Plan. (*Id.* at ¶¶ 21-22, 26). Plaintiff acknowledges that the letter "entitled" him to request external review of EPBAC's decision "subject to Cigna accepting such a request." (*Id.* at ¶ 22) (internal quotations and alterations omitted). Nevertheless, Plaintiff alleges that any attempt to pursue these administrative remedies was "futile" "[i]n light of the established NextEra Plan documents, statements and written representations by Cigna." (*Id.* at ¶ 26). Accordingly, Plaintiff avers that he "exhausted his administrative remedies." (*Id.*). After the Committee affirmed the denial of coverage, Plaintiff paid for the Evoke program out of pocket. (*Id.* at ¶ 45).

In the SAC, Plaintiff did not reassert claims against the NextEra Defendants, as described in the Dismissal Order, but only against Cigna. Like the Amended Complaint, the SAC contains two counts arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Count One seeks to recover benefits under the Plan, 29 U.S.C. § 1132(a)(1)(B). (SAC at ¶¶ 54-57). Count Two alleges that Defendant breached their fiduciary duties to the Plan participants and beneficiaries and seeks equitable relief. (*Id.* at ¶¶ 59-65). Plaintiff also seeks class certification. (*Id.* at ¶¶ 46-52). He asserts that he is representative of a class of potential plaintiffs whose insurance plan was insured and/or administered by Cigna and whose claims for coverage of wilderness programs were unlawfully denied. (*Id.*).

In Count One, Plaintiff's theory underlying his "plan enforcement" ERISA claim is based on a new claim in the SAC under the Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 ("the "ACA"), codified at 42 U.S.C. § 300gg-5, which is incorporated into ERISA. (*Id.* at ¶¶ 54-57). Plaintiff alleges that Cigna's application of its definition for Psychiatric Residential Treatment Facilities ("PRTFs") "violates the provider non-discrimination provision of the [ACA], which prohibits Cigna from discriminating against a health care provider

4

that is acting within the scope of the provider's license under applicable state law," here, Evoke's Outdoor Youth Program license under Utah law. (*Id.* at ¶¶ 27-32, 34).

In Count Two, Plaintiff asserts a breach of fiduciary duty claim under ERISA under two theories: (1) the ACA, as alleged in Count One; and (2) the Parity Act, as Plaintiff alleged in the Amended Complaint. (*Id.* at ¶¶ 58-65). To support his Parity Act claim, Plaintiff alleges that "Cigna would have authorized payment for [his son's] psychiatric assessment and individual, group, and family therapy sessions if he had been treatment [sic] in a residential program other than an outdoor/wilderness behavior health care program." (*Id.* at ¶ 20). Plaintiff also avers that Cigna's insurance coverage of PRTFs is not "at parity" with Cigna's coverage of the analogous medical/surgical treatments because the "Plan does not have any limitation on medical/surgical care coverage at skilled nursing facilities comparable to the blanket exclusion of outdoor/wilderness behavioral healthcare programs." (*Id.* at ¶ 40).

The instant Motion seeks to dismiss the SAC on several grounds, including (1) failure to exhaust administrative remedies under the Plan before filing suit; ben(2) that Cigna is not a proper defendant as to Plaintiff's "plan enforcement" claim in Count One; (3) that Count Two should be dismissed because Count One provides adequate remedies; (4) that Plaintiff's ERISA claim based on an ACA violation should be stricken as untimely, or because there is no basis for relief; and (5) that Plaintiff fails to state a claim under the Parity act pursuant to Fed. R. Civ. P. 12(b)(6). (DE 85).

## II. LEGAL STANDARD

In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient). Further, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (citation omitted).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## III. DISCUSSION

In the Dismissal Order, I assumed *arguendo* several threshold issues that Cigna again raises in the instant Motion, including whether Cigna is a proper defendant, and whether Plaintiff

exhausted the administrative appeals process. (DE 80 at 6). In doing so, I analyzed whether Plaintiff stated an ERISA claim based on the Parity Act and concluded that even after assuming *arguendo* the threshold issues, "Plaintiff's Parity Act claim is fundamentally defective." (*Id.* at 7). In light of clearly established Eleventh Circuit precedent regarding the necessity of exhausting all available administrative remedies before bringing suit under ERISA, as described in the Parties' briefing, I must address the threshold issues determining whether Plaintiff can bring suit.

In the Motion, Cigna argues that "Plaintiff's failure to allege facts demonstrating that he exhausted *all* claims procedures available to him, including external review rights – as expressly required under the Plan and well-established Eleventh Circuit precedent – mandates dismissal of the action." (DE 81 at 24). "The law is clear in [the Eleventh Circuit] that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008). "The exhaustion requirement applies to complaints for breach of fiduciary duty under ERISA regardless of whether the breach was committed by a third-party administrator," like Cigna, "or the employer." *Lanfear*, 536 F.3d at 1224. "This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citation omitted).

Importantly, the Eleventh Circuit "appl[ies] the exhaustion requirement strictly and recognize[s] narrow exceptions only based on exceptional circumstances." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000). This is because "despite ERISA's silence as to any explicit exhaustion requirement, a strong policy favoring such exhaustion underlies the statutory scheme." *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990). "This rule is grounded in several important policy rationales, and also is consistent

7

with Congressional intent." *Perrino*, 209 F.3d at 1315. The rationales include (1) reducing the number of frivolous lawsuits under ERISA; (2) minimizing the costs of dispute resolution; and (3) allowing the plan's managers to fully consider the dispute before resorting to court intervention, among others. *Id.* (citations omitted).

Narrow exceptions to the exhaustion requirement include "when resort to administrative remedies would be futile or the remedy inadequate, . . . or where a claimant is denied 'meaningful access' to the administrative scheme in place." *Bickley*, 461 F.3d at 1328. With regard to whether it would be futile to pursue administrative remedies, "bare allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement." *Id.* at 1330. At its core, "the futility exception is about meaningful access to administrative proceedings." *Lanfear*, 536 F.3d at 1224. Indeed, the exception "recognize[s] that there are situations where an ERISA claim cannot be redressed effectively through an administrative scheme" and instead would be "an empty exercise in legal formalism." *Perrino*, 209 F.3d at 1318.

Notably, "[t]he inquiry into the futility exception generally ends on the failure to initiate a timely appeal alone." *La Ley Recovery Sys.-OB, Inc. v. UnitedHealthcare Ins. Co.*, No. 14-23451, 2015 WL 12977396, at *7 (S.D. Fla. July 28, 2015) (citing *Bickely*'s determination that a "claim of futility is merely speculative because he did not even attempt to pursue the administrative procedure available" *Bickley*, 461 F.3d at 1330)). "If a claimant never timely invokes the review process, a court can only speculate as to whether pursuing administrative remedies would have been futile, and courts have repeatedly declined to engage in such speculation." *Id.* (citing *Lanfear*, 536 F.3d at 1225).

Here, the SPD and Denial Letter clearly describe the administrative remedies available to Plaintiff that he was required to exhaust before filing suit in federal court. In a section titled

8

"How to Enforce Your ERISA Rights," the SPD states: "If you have a claim for benefits that is denied or ignored in whole or in part *and if you have exhausted the claims procedures available to you under the Plan*, you may file suit in a state or federal court (see "If a Claim Is Denied")." (SAC, Ex. A at 122).

The "procedures available" to a claimant who disagrees with the Committee's decision on a claim for coverage, benefit eligibility, or "any other issues" about benefits are outlined in the "If a Claim is Denied" section of the SPD. (*Id.* at 125). The procedures describe the process for appealing an "Initial Decision" on the claim, including first- and second-level appeals, and, lastly, external review requests. (*Id.* at 125-131). In a section called "External Review Request," the SPD provides that after exhausting the appeals process described above, "in certain circumstances you may be entitled to request a review by an external independent review organization. If you are entitled to request review by an external independent review organization, your final letter of denial will instruct you how to file such a request with [the Committee]. You must request an external review within 180 days of your receipt of the final letter of denial." (*Id.* at 130). Finally, the SPD states that "[o]nce you have exhausted your appeal *and external review rights*, you may choose to seek legal action under ERISA. . . . You cannot bring a lawsuit for plan benefits until you have exhausted your rights to appeal your claim denial." (*Id.* at 131) (emphasis added).

As referenced in the "External Review Request" section, Plaintiff's Denial Letter expressly informed Plaintiff that he was "entitled to request a review [of the appeal denial] by an external independent review organization . . . [within] 180 days from the date of receipt of this adverse benefit determination." (SAC, Ex. B at 3). Plaintiff only alleges that he "completed the internal appeal process," but does not allege that he completed the external review; instead, Plaintiff acknowledges that he was "entitled to request external review" and that whether his

9

claim was reviewed "was subject to Cigna accept[ing] such a request." (SAC at ¶¶ 22, 26). Cigna argues that "Plaintiff does not allege that he exhausted his *external* appeal rights – despite the fact that [the Denial Letter] advised Plaintiff that he had the right to seek such review," and therefore Plaintiff failed "to allege facts demonstrating that he exhausted *all* claims procedures available to him" as required by the Plan and the Eleventh Circuit. (DE 85 at 24).

Plaintiff does not dispute that he failed to request an external review of his coverage denial; instead, Plaintiff argues that (1) "Cigna's exhaustion argument is premature" because exhaustion is an affirmative defense; (2) Plaintiff was only "*entitled* to request review" but "the Plan did not *mandate* that he do so;" (3) "the exhaustion requirement is judicially-made doctrine" and therefore is "not ironclad;" and (4) the futility exception to the exhaustion requirement applies because "Cigna's claim decision was . . . ironclad and not subject to further debate or good-faith reconsideration." (DE 95 at 22-23). Plaintiff's failure to allege that he exercised his right to request an external review, and his failure to dispute Cigna's contention that Plaintiff did not, in fact, request an external review, demonstrates that Plaintiff did not "exhaust available administrative remedies before suing in federal court." *Lanfear*, 536 F.3d at 1223.

Plaintiff's arguments for why I should overlook his failure to request an external review are unpersuasive, and will be addressed in turn. First, Plaintiff alleges that exhaustion is an affirmative defense, and therefore a determination regarding exhaustion cannot be made on a motion to dismiss. (DE 95 at 15-16). In support of his argument, Plaintiff erroneously cites to an unpublished Third Circuit opinion, ignoring the ample Eleventh Circuit precedent permitting district courts to dismiss ERISA claims on a motion to dismiss based on a plaintiff's failure to exhaust all available administrative remedies. *See, e.g., Bickely*, 461 F.3d 1325; *Springer*, 908 F.2d 897 (remanding with instructions to dismiss lawsuit for failure to exhaust administrative remedies); *Lanfear*, 536 F.2d at 1220 (remanding to district court to determine whether to

10

dismiss complaint without prejudice or to stay litigation after "agree[ing] with the district court that the [plaintiffs] failed to exhaust their administrative remedies").

Second, Plaintiff argues that because the Denial Letter was a "final determination," and because Plaintiff was not *mandated* to request external review, but was only *entitled* to do so, Plaintiff sufficiently exhausted his administrative remedies. (DE 95 at 22). However, Plaintiff's argument is contradicted by the express terms of the SPD and Eleventh Circuit precedent. Before bringing legal action under ERISA in court, the SPD required Plaintiff "to have exhausted the claims procedures available to you under the Plan," which included "appeal and external review rights." (SAC, Ex. A at 122, 131). The SPD even expressly states: "You cannot bring a lawsuit for plan benefits until you have exhausted your rights to appeal your claim denial." (*Id.* at 131). Here, the Denial Letter informed Plaintiff that he was "entitled to request a review by an external independent review organization." (SAC, Ex. B at 3). Plaintiff does not dispute that he was entitled to request an external review, that such a request was "available," and that he did not request such review. (SAC at ¶ 22-23; DE 95 at 22). Moreover, Plaintiff does not provide any case law to support his contention that he was not required to request an external review to exhaust his administrative remedies here; in fact, longstanding Eleventh Circuit precedent dictates the opposite. *See, e.g., Lanfear*, 536 F.3d at 1223. Accordingly, Plaintiff's argument is without merit.

Finally, Plaintiff argues that requesting an external review would have been futile, one of the recognized narrow exceptions to the exhaustion requirement in the Eleventh Circuit. (DE 95 at 22-23; SAC at ¶ 26); *Bickley*, 461 F.3d at 1328. Plaintiff curiously begins his argument by noting that "there is no reference to [the exhaustion requirement] in the ERISA statute," and that it is a "judicially-made doctrine" that is somehow "not ironclad." (DE 95 at 22). Plaintiff argues that "exhaustion in this instance was futile" and that "Cigna's claim decision was (and is)

11

ironclad and not subject to further debate or good-faith reconsideration." (DE 95 at 23). Plaintiff's only allegation justifying his failure to request an external review is that "[i]n light of the established NextEra Plan documents, statements and written representations by Cigna, any attempt by class members to pursue administrative remedies is futile." (SAC, ¶ 26).

Plaintiff's bare allegations in the SAC and conclusory statements in his Response fall far short of establishing applicability of the futility exception. His allegation that the decision was "ironclad" and "not subject to further debate or good-faith reconsideration" is belied by the express conditions of the external review which Plaintiff declined to request. (SAC, Ex. B at 3). The Denial Letter unequivocally contradicts these allegations, because it describes the external review as an "*external independent review* . . . conducted by a provider with experience in the applicable specialty and performed *as a complete review of all relevant provided medical information.*" (*Id.*) (emphasis added). Any notion that the appeal's denial was an "ironclad" decision is undermined by the fact that "the plan would be *bound by any decision made by the external reviewer.*" (*Id.*).

Moreover, Plaintiff's allegations are more akin to "bare allegations of futility" than "the clear and positive showing of futility required before suspending the exhaustion requirement." *Bickley*, 461 F.3d at 1328. Plaintiff has put forth no allegations to suggest that he did not have "meaningful access" to the administrative scheme outlined in the SPD or Denial Letter, or that exercising his right to request an independent external review of his claim would have been "an empty exercise in legal formalism." *Perrino*, 209 F.3d at 1318. In light of the availability of an independent, complete review of the claim by the external reviewer, and the fact that the plan would be bound by the reviewer's decision, Plaintiff has put forth no convincing allegations suggesting futility in requesting the review.

Here, Plaintiff had 180 days from June 23, 2015, the day he received the Denial Letter, to request an external review of the coverage denial. (SAC, Ex. B at 3; SAC, Ex. A at 130). It is undisputed that Plaintiff did not timely request an external review by December 20, 2015, and instead filed this action fourteen months later, on February 24, 2017. (DE 1). "The Eleventh Circuit has upheld 180-day review periods" to appeal a denial of benefits. *La Ley*, 2015 WL 12977396, at *8 (citing *McCay v. Drummond Co., Inc.*, 509 F. App'x 944, 950 (11th Cir. 2013)). Plaintiff has not alleged that his failure to timely request an external review was the result of any improper actions by Cigna to block Plaintiff's access to the review; in fact, the Denial Letter shows that Cigna expressly informed Plaintiff about the external review, and how to request it. Although Plaintiff timely appealed the initial decision to deny coverage, as reflected in the Denial Letter, Plaintiff's failure to "even attempt to pursue the administrative procedure available," the external review, "generally ends [any] inquiry into the futility exception." *Id.* at *7. It is true that at the time Plaintiff filed suit, requesting an external review would have been "futile" in the sense that his 180-day window to request such a review had long since expired. However, the "foreclosure of untimely administrative remedies . . . only demonstrates colloquial futility, not the legal futility and the denial of meaningful access required to excuse the exhaustion requirement necessary to bring an ERISA claim." *Id.* at *8. Furthermore, allowing Plaintiff to bring suit in this case would undermine the Eleventh Circuit's strong policy of requiring a claimant to exhaust all available administrative remedies before bringing an ERISA claim in court. If I were to allow Plaintiff to proceed here, future claimants may be incentivized to wait out review periods until they are time-barred from using the plan's administrative procedures so that they can bring suit, arguing that the courts provide the only remedy. I decline to endorse such behavior.

Since it is undisputed that Plaintiff did not exhaust all available administrative remedies before filing this ERISA suit, and that Plaintiff did not put forth any "clear and positive showing of futility" or otherwise persuade me that he should be excused from the administrative exhaustion requirement, Plaintiff's case is dismissed. Moreover, the time for Plaintiff to exhaust his administrative remedies has expired, due to no fault of Cigna. Therefore, Plaintiff may not refile his ERISA claims against Cigna based on the denial of coverage referenced in the SAC, and Plaintiff's case is dismissed with prejudice. Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that

(1) Cigna's Motion to Dismiss (DE 85) is **GRANTED**.

(2) The Second Amended Complaint (DE 81) is **DISMISSED WITH PREJUDICE**.

(3) The Clerk of Court shall **CLOSE THIS CASE** and **DENY** all pending motions **AS MOOT**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 15 day of March, 2018.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record